COMMERCIAL FACTORS CORPORATION *vs.* JOHN PARRILLO *et al. d.b.a.* JOHNSTON WORSTED CO.

JANUARY 31, 1958.

PRESENT: Condon, C. J., Roberts, Andrews and Paolino, JJ.

72

CONDON, C. J. This is an action of trover and conversion. The case is here on the plaintiff's bill of exceptions to the denial of its motion to amend the declaration and to the decision of a justice of the superior court in favor of the defendants.

The declaration alleged that on October 6, 1953 defendants converted to their own use 8,000 pounds of yarn belonging to plaintiff and that defendants, although often requested, refused to return such yarn. The defendants pleaded the general issue.

It appears from the evidence that the yarn in question was received by defendants from the Hoffman Trading Corporation of the city of New York from time to time to be woven into cloth for its account. However, on October 6, 1953 and on June 20, 1955 Hoffman Trading Corporation assigned to Commercial Factors Corporation of New York all its rights to whatever amounts of yarn were then in inventory or in process in the hands of defendants.

Neither assignment mentioned any specific amount of yarn and apparently the amount could not be determined from the Hoffman Trading Corporation's books. Consequently efforts were made to ascertain such fact from an

examination of defendants' books in the town of Johnston in this state where they were doing business as partners under the firm name of Johnston Worsted Company. The evidence did not show that they had any specific amount of yarn on hand belonging to plaintiff at the time of the alleged conversion other than 2,795 pounds which were accounted for to the satisfaction of the plaintiff.

After summarizing the testimony of the principal witnesses and referring to certain exhibits which had been introduced in evidence by plaintiff for the purpose of proving the amount of yarn in defendants' mill and its demand therefor, the trial justice stated that he was of the opinion and found "that the plaintiff has not proved by a fair preponderance of the credible evidence that there was a conversion by the defendants, as alleged, on or about October 6, 1953." He further stated: "There can be no question that the yarn belonging to the Hoffman Trading Corporation and later to this plaintiff came into the possession of these defendants rightfully. It was necessary therefore before bringing this action that there be a demand upon these defendants. There is no evidence in the case of such demand by Hoffman Trading Corporation nor by the plaintiff herein."

The plaintiff contends that it is apparent from such decision that it is based "upon two principles of law, first, that inasmuch as the Declaration alleged that on, to wit, the same day (the 6th day of October, 1953), the defendants converted and disposed of the property in question, that the plaintiff must show the conversion was on or about that date; and secondly, that in view of the circumstances of this case that it was necessary that a formal demand, other than was given in this case, be made upon the defendants before being able to recover."

The plaintiff then states that on its view of the trial justice's decision there are two questions of law which are determinative of the issues in the case: First, was a demand

necessary; and secondly, was plaintiff limited to proof of a conversion on October 6, 1953 as alleged, or was it a fatal variance if the proof was of a conversion between that date and June 1954? The plaintiff assumes that there was evidence of a request for the yarn in defendants' hands and, therefore, "no additional demand" was necessary, and further that it was not bound by the allegation of the date of the conversion in its declaration but could establish its case by proof of a different date, provided it was prior to the commencement of the suit and within the period fixed by the statute of limitations.

We agree with its contention that no additional demand was necessary if it is clear from the evidence that a definite request was made for the specific goods sufficient to amount in effect to an unequivocal demand for their surrender. See *Larson* v. *Dawson*, 24 R. I. 317, 318, where it was stated that in trover the plaintiff "must also be able to identify the goods and chattels alleged to have been converted, with reasonable certainty at least, or, at any rate, to so describe the property as to render it capable of identification, in order that it may be determined whether in fact it belonged to him as alleged at the time of its conversion." We also agree that the law does not necessarily in all instances confine the proof of the conversion to the date alleged in the declaration. *Aldrich* v. *Higgins*, 77 Conn. 370; 89 C.J.S., Trover and Conversion, §115, p. 607; 53 Am. Jur., Trover and Conversion, §170, p. 939.

However, we differ with plaintiff in our interpretation of the trial justice's rescript. We do not understand that he rested his decision either on the absence of an *additional* demand or on a material variance between the alleged date of the conversion and plaintiff's proof. On the contrary we deem it to be based solely on a consideration of the credible evidence as to whether plaintiff or anyone acting for it ever made *any demand* for the return of the quantity of yarn in question. After weighing such evidence he con-

cluded that plaintiff had failed to discharge its burden of proving that such a demand had been made.

The testimony on this point was conflicting. The plaintiff's witnesses did not testify clearly and definitely that a demand was made. Most of their testimony related to efforts which had been made at defendants' mill to determine what amounts of yarn, if any, remained in defendants' hands after they had sold to Nathan Dwares the 2,795 pounds hereinbefore referred to as having been accounted for to plaintiff's satisfaction.

On the other hand the defendant Thomas V. Parrillo testified as follows: "Q. After that was sold was any demand or request, were you asked to return any yarn to Commercial Factors? A. No sir." He also testified: "Q. Mr. Parrillo, after Mr. Herson left your place of business in Johnston, did Mr. Herson ask you to return Eight Thousand Pounds of yarn to the Commercial Factors? A. No. Q. On October 6th, 1953, did Mr. Herson or any agent or representative of the Commercial Factors ask you to return Eight Thousand pounds of yarn to them? A. No sir." Mr. Richard J. L. Herson, an accountant, had been sent to defendants' mill to ascertain from their books or otherwise how much yarn remained in defendants' hands. Mr. Parrillo testified further as follows: "Q. At any time after October 6th, 1953, to the present day has any agent, representative or member of the Commercial Factors organization, requested you to return to them Eight Thousand, One Hundred and Thirty-five pounds of yarn? A. Never been a demand upon me to return it."

While Mr. Herson was at the mill he talked with Thomas V. Parrillo and also with defendants' accountant Michael T. Federico. Herson told Federico that they suspected there was a shortage of pieces that had been sent to New York, but Federico testified that he, Herson, did not mention any shortage of yarn. Apparently the witnesses used the word "pieces" to distinguish yarn that had been proc-

essed or was in process from yarn in inventory. It was the latter which plaintiff claimed had been converted. Federico was asked: "Was there any conversation with Mr. Herson relative to any shortages that were attributed to Johnston Worsted Company?" He answered: "None whatsoever relative to return of any shortage." He testified further that Herson telephoned him later and told him that there appeared to be some shortages, but he did not specify whether it was in yarn or pieces.

Meyer C. Hoffman, president and sole stockholder of Hoffman Trading Corporation, also testified by deposition for the plaintiff. In his direct examination he was asked and he answered the following questions: "Q. When did Hoffman Trading Corporation cease to do business with Johnston Worsted Co? A. Approximately June of 1954. Q. When you ceased to do business with Johnston Worsted Co. in June, 1954, did they return the yarn held at their premises in the name of Hoffman Trading Corporation? A. No. Q. And as of that date, how much yarn was at the premises of Johnston Worsted Co. or should have been? A. I do not know but I was advised by Mr. Herson, who is the accountant, that we should have had on hand about 12,000 pounds. Q. Did you make demand upon either defendant or the Johnston Worsted Co. for the yarn that was not returned? A. No. All of this belonged to Commercial Factors Corporation because it had been assigned to them."

From our examination of the transcript, we cannot say that the trial justice was clearly wrong in not crediting the testimony of Herson and Hoffman and in inferring therefrom that an unequivocal demand for the yarn in question had been made to defendants on behalf of plaintiff. Indeed as we read the transcript it is not clear to us that plaintiff ever established that there was a shortage of *yarn* as distinguished from *pieces* over and above the 2,795 pounds which were acknowledged by defendants and sold

to Dwares for plaintiff's account and to its satisfaction. In any event if there was an amount of 8,000 pounds retained by defendants there is no credible evidence that a specific demand therefor was ever made upon them.

In its brief plaintiff cites certain testimony of Thomas V. Parrillo as tending to show such a demand. Merely to quote that testimony is to demonstrate that it falls far short of a demand. "Q. And after he left your place in June of 1954, Mr. Parrillo, did you ever up to this day receive any communication or correspondence from the Commercial Factors, the plaintiffs, that you owed them any amount of yarn or goods? A. Not that I know of. Q. Did you? A. I doubt it. Q. Do you know whether you did or not? A. I know they told me to take all the stuff that was Hoffman Trading Corporations, the yarns, to sell to certain parties, certain goods to ship to certain customers they referred to. Q. Did you follow their instruction? A. Yes. Q. At any time after you delivered the goods as per their instructions, the Commercial Factors, did you have any correspondence from anyone that you owed them any yarn? A. Not that I know of. Q. Did you, yes or no? A. I don't think so, no."

The plaintiff's exception to the decision is overruled. Its other exception to the denial of its motion to amend its declaration, which it made at the conclusion of the evidence so as to make proof of conversion on a date other than the date alleged acceptable and thus avoid a claim of variance, need not be discussed since we have herein assumed that the plaintiff had the right to have such proof considered. In the absence of proof of a demand, formal amendment of the declaration would have been unavailing; hence the plaintiff suffered no harm by reason of the trial justice's refusal to allow such amendment.

All of the plaintiff's exceptions are overruled, and the case is remitted to the superior court for entry of judgment on the decision.

*Halpert & Beaver, Kenneth M. Beaver,* for plaintiff.

*DiMascolo & DiPetrillo, Anthony DiPetrillo,* for defendant.